IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID AWALT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL NO. 04-126-GPM |
| | ) |
| ALLIED SECURITY, REMEDIAL | ) |
| CONSTRUCTION SERVICES, L.P., | ) |
| CONOCOPHILLIPS COMPANY, | ) |
| and PRESTON WHITE, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**MURPHY, Chief District Judge:**

This matter is before the Court on a motion for summary judgment filed by the two remaining Defendants Remedial Construction Services, L.P. ("Recon") and Preston White. The Court held a hearing on the motion on December 5, 2005 (*see* Doc. 165). At the hearing, the Court granted Awalt additional time, up to and including December 9, 2005, to file a supplemental opposition to the motion. Awalt supplemented his response as ordered (*see* Doc. 166), and Recon and White filed a supplemental reply on December 16, 2005 (*see* Doc. 167). The Court has now reviewed all of the materials before it, and, for the following reasons, the motion for summary judgment is granted.

Jurisdiction is premised upon diversity of citizenship, 28 U.S.C. § 1332(c). According to the second amended notice of removal and various affidavits (*see* Doc. 37), Plaintiff Awalt is a citizen of Illinois. Defendant Allied Security, LLC, is a limited liability company with three

members: William Whitmore, a citizen of Pennsylvania, William Torzolini, a citizen of Pennsylvania, and Bruce Gelting, a citizen of Pennsylvania. Defendant Remedial Construction Services, L.P., is a limited partnership with one general partner, Thutmose, LLC,[1] and three limited partners, The Steven Rush Family Limited Partnership, The Brad Alan Family Limited Partnership, and The Birdwell Family Limited Partnership. All partners in each of these three partnerships are citizens of Texas. (*See* Exhibits 6-8 to Doc. 37.) Defendant ConocoPhillips Company is a Delaware corporation with its principal place of business in Texas. Defendant Preston White is a citizen of Texas.

Although the complaint only seeks damages in excess of fifty thousand dollars in accordance with state practice, the affidavit of Steven R. Birdwell attests that at the time of the alleged incident in the complaint, Awalt was being paid a gross yearly wage of $80,100 for a 50 week year. Because the complaint seeks damages for tortious interference with Awalt's employment, including substantial lost wages, as well as personal physical injuries, the Court finds that the amount in controversy requirement of $75,000, exclusive of interest and costs, has been met.

## BACKGROUND

This action was removed by Defendant ConocoPhillips Company from the Circuit Court for Madison County, Illinois, on February 25, 2004. The second amended complaint seeks recovery against Allied Security, Recon, ConocoPhillips Company, and Preston White under theories of libel, slander, false light, right of privacy, and tortious inference with an employment contract. (*See* Doc. 67.) The Court notes that Awalt conceded motions for summary judgment filed against him by

---

[1] The members of Thutmose, LLC, are Gene R. Birdwell, Brad A. Birdwell, and Steven R. Birdwell. All are citizens of Texas. (*See* Exhibits 6-8 attached to Doc. 37.)

ConocoPhillips and Allied Security. (*See* Docs. 138, 165.)

The facts are as follows: David Awalt and a man named Robert Lucas worked for Recon in April 2003.[2] Recon's business involved environmental cleanup of property located in Roxana, Illinois, commonly known as the Shell Refinery. This environmental cleanup was mandated by the Illinois Environmental Protection Agency. Through a series of transactions, acquisitions, and mergers, ConocoPhillips acquired ownership of the land, although Shell retained responsibility for pre-existing environmental liabilities. Recon contracted with Shell to work on the environmental remediation project on an area known as "Site 15".

Awalt and Lucas were members of the Operating Engineers Union Local No. 520 and were hired for their jobs by Recon out of the union hall located in Wood River, Illinois. David Awalt worked as a foreman.

Defendant White was the health and safety officer for Recon. His primary responsibility was to supervise Recon employees concerning health and safety requirements of the environmental cleanup project and to help the employees perform their duties safely. Recon employees were told that there was an "exclusion zone" on Site 15 where all of the contaminated materials were located. Materials in the exclusion zone could not be removed from the job site because they had hazardous waste on them. Recon employees were also told that anything inside the exclusion zone had to stay there. Part of Recon's job also involved decontaminating equipment that had been used in the

---

[2] Robert Lucas filed suit against the same parties on the same day as David Awalt (*see* Cause No. 04-127-GPM). The cases were consolidated on May 20, 2004. Lucas and Awalt were represented by the same attorney until October 3, 2005, when the attorney's request to withdraw from representation of Robert Lucas was granted (*see* Doc. 151 in Cause No. 04-126-GPM). Lucas subsequently failed to respond to the motions for summary judgment pending against him, and the cases were unconsolidated and judgment entered against Lucas (*see* Doc. 168 in Cause No. 04-126-GPM and Docs. 40, 41 in Cause No. 04-127-GPM).

exclusion zone. Recon employees wore fire retardant clothing, including a raincoat with a rain hood, safety glasses, goggles, and a face shield, when working with hazardous materials.

The contract between Recon and Shell required that a pass system was to be in effect at the gate entrance to Site 15. This pass system provided that the gate guard maintain a list of all authorized signatures of individuals going into or out of the gate. Standard procedures for entering and exiting Site 15 dictated that every individual had to stop at the guard shack and sign in or out. The guard was also required to check each individual's badge and search his vehicle each time anyone came into or exited out of Site 15. After these procedures were completed, the guard would then physically move the gate to let the individual in or out. Occasionally, however, the gates were left open when trucks were hauling loads of dirt in and out. Loads of dirt were being hauled in and out of the facility during the time in question.

Most employees entered onto Site 15 in company vans after parking their personal cars in an area off-site. Awalt was an exception to this rule, however, because of his duties as a mechanic. He was allowed to drive his personal vehicle (a grey Ford F-150 with a "999" sticker on the back right window) onto Site 15.

On April 23, 2003, White filed a report stating that Awalt and an individual named Frank Duich were riding in one of the Recon trucks and had a dock platform in the back of the truck. White testified that he had seen Awalt and Duich in a Recon truck on April 23 with a contaminated boat dock described as an aluminum platform approximately ten feet by ten feet and referred to by some as a floating dock. White testified that numerous employees were interested in taking the dock home with them, but Art Moore, the health and safety liaison for ConocoPhillips, specified that the dock and its components were contaminated and were to remain on site and be buried. It is

undisputed that the dock had been in contaminated water and was classified as contaminated material.

On April 23, the dock was moved outside of the exclusion zone where the contaminated materials were located and placed adjacent to the Recon trailers. This is where Awalt normally parked his personal truck.

On April 24, Awalt and Lucas were working for Recon on Site 15 doing decontamination washing. Defendant White was their supervisor. On that day, the gate guard, Herbert Clemons, observed Awalt's truck entering the site containing nothing in the truck bed. Later in the day, the same guard observed the same truck being driven off Site 15 with something in the truck bed. Clemons noted that the item was covered with contaminated hazardous material, and he recognized the driver as Robert Lucas. Although Clemons noticed a passenger in the truck, he could not identify him.

Approximately ten to fifteen minutes later, Clemons observed Lucas driving Awalt's truck back onto the site with an empty truck bed. Clemons attempted to stop the truck both when it left and when it returned in order to determine if a pass for the removal of the materials had been issued. He was not successful. Clemons notified Defendant White and others of this breach of security regulations.

At approximately 2:35 p.m. on April 24, White saw Awalt's truck being driven off Site 15 with what White identified as a section of a boat dock or floating platform that had been moved the day before. White contacted Tim Hicks of URS Corporation (a party who had contracted with Shell to serve as the project manager on the environmental cleanup project). Clemons notified William Everts of Allied Security, and, thereafter, Everts and White met at Site 15.

Everts told White that "a vehicle drove out of the gate with something in the back of it." Everts testified that he discussed this with White because White was the supervisor of the Recon work area. Everts testified that he did not tell White something was stolen or taken without permission, but stated that "a vehicle drove out of the gate without stopping with something in the back of the vehicle and then came back in without stopping with it gone." Everts testified that White had more or less the same observation of events although he had seen a dock platform which he knew had been in the contaminated area. White also told Everts that on the previous day, April 23, two employees had put the platform in the back of a truck and White told them to take it out because it was contaminated waste and would have to be buried.

Defendant White, Tim Hicks, Bill Everts, and Phil Hamilton of Allied Security conducted individual interviews of Awalt, Lucas, and others regarding the removal of the material from Site 15. As a result of the incident and subsequent investigation, Awalt's and Lucas's badges to work on Site 15 were pulled at the end of the work day on April 24. The next day, Awalt was told that if the material was returned within 48 hours, his badge would be reinstated and no other discipline would be pursued. Lucas was also informed of this offer. Neither Awalt nor Lucas returned the missing material to Site 15.

Tim Hicks eventually contacted Eric Petersen of ConocoPhillips to apprise him of the incident and the potential release of hazardous material from the site. White testified that Hicks told him that Eric Petersen relayed in a memo that if the dock had been taken it would potentially be in violation of several federal statutes and could expose Shell to additional environmental liability, in addition to personal liability for the individuals involved.

Two days later, Awalt was called to work out of the union hall for The Washington Group,

a subcontractor working at the Shell facility. Awalt worked one full day at the refinery, but when he returned to work the next day, he was escorted out by security guards and his foreman from The Washington Group. He was told that he was not allowed entry at the refinery. No reasons were given.

Sometime after the incident of April 24, ConocoPhillips contacted the IEPA to tell them of the removal of hazardous material from Site 15. The IEPA referred ConocoPhillips to the United States Environmental Protection Agency (USEPA).

Defendant White denies that he ever said Awalt and/or Lucas stole the dock. ConocoPhillips made the corporate decision not to allow Awalt or Lucas on refinery property. White attested that he did not ask anyone not to hire Awalt in the future or prevent him from being hired.

## ANALYSIS

The standard applied to summary judgment motions filed under Federal Rule of Civil Procedure 56 is well-settled and has been succinctly stated as follows.

> Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether a genuine issue of material fact exists, [the court] must view the record in a light most favorable to the nonmoving party. Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial. The evidence must create more than some metaphysical doubt as to the material facts. A mere scintilla of evidence in support of the nonmovant's position is insufficient; a party will be successful in opposing summary judgment only when it presents definite, competent evidence to rebut the motion.

*Albiero v. City of Kankakee*, 246 F.3d 927, 931-32 (7th Cir. 2001) (internal citations and quotations omitted).

Recon and White argue that Awalt is unable to establish the elements for slander and libel as he has insufficient evidence of a defamatory statement. Moreover, Recon and White argue that they are not liable under the qualified privilege exception to the defamation claims. They also argue that Awalt cannot establish the essential elements of claims for invasion of privacy or tortious interference with business expectancy.

Defamation Claims

A false statement is an essential element of a claim for slander or libel. Truth is a complete defense. *Pope v. Serendipity: Russian Consulting and Dev., Ltd.*, 95 F.3d 607, 613 (7th Cir. 1996). Awalt bears the burden of proving that the statements about him were false and, on the undisputed facts before this Court, he has failed to do so.

Even if the Court could find the statements defamatory *per se* as Awalt urges, the Court finds as a matter of law that Recon and White are entitled to a qualified privilege. As explained by the Illinois Supreme Court, "'a privileged communication is one which, except for the occasion on which or the circumstances under which it is made, might be defamatory and actionable.'" *Kuwick v. Starmark Star Marketing and Admin., Inc.*, 619 N.E.2d 129, 133 (Ill. 1993), *quoting Zeinfeld v. Hayes Freightlines, Inc.*, 243 N.E.2d 217, 222 (Ill. 1968). A qualified privilege "is based on the policy of protecting honest communications of misinformation and certain favored circumstances in order to facilitate the availability of correct information." *Kuwick*, 619 N.E.2d at 133. It "serves to enhance a defamation plaintiff's burden of proof. Where no qualified privilege exists, the plaintiff need only show that the defendant acted with negligence in making the defamatory statements to prevail. However, once a defendant establishes a qualified privilege, a plaintiff must prove that the defendant either intentionally published the material while knowing the matter was false, or

displayed a reckless disregard as to the matter's falseness." *Id.* (internal citations omitted).

The parties focus to a great extent on whether Recon and White accused Awalt of "stealing" the dock, and Awalt insists that he had nothing to do with its disappearance. But the undisputed facts are simply that Recon and White investigated an incident where Awalt's truck was seen leaving a restricted area with something in the back and returning with it gone. Whether the word "steal" was used or not, whether Awalt took the dock or not, Recon and White had a duty to investigate the incident, and such investigation necessarily involved relating the relevant facts to others.

> Where circumstances exist, or are reasonably believed by the defendant to exist, from which he has an interest or duty, or in good faith believes he has an interest or duty, to make a certain communication to another person having a corresponding interest or duty, and the defendant is so situated that he believes, in the discharge of his interest or duty or in the interests of society, that he should make the communication, and if he makes the communication in good faith, under those circumstances, believing the communication to be true, even though it may not be true, then the communication is qualifiedly or conditionally privileged, even though the defendant's interest or duty be not necessarily a legal one but only moral or social and imperfect in character.

*Zeinfeld*, 243 N.E.2d at 221 (internal citations omitted).

Recon and White are protected by a qualified privilege because they did nothing more than investigate an incident at the work place. Disclosure of the eyewitness facts was made to no one other than persons at the work site. Whether Awalt took the dock or not, the issue is whether it was reasonable for Recon and White to investigate the disappearance of the dock. Their interest in investigating this interest was not only reasonable, they were under a legal duty to do so.

Under *Kuwick*, this Court must "weigh the value of the type of interest to be protected against the degree of damage to be expected from release of the type of defamatory matter involved." *Kuwick*, 619 N.E.2d at 133. Here, the type of interest to be protected against was the

release of contaminated property into the general community. Besides the obvious nature of the potential harm by such event, there are numerous federal and state statutory regulations at issue. This interest far outweighs the degree of damage to be expected from release of information relating to an investigation of the removal of contaminated property. Awalt has not refuted the fact that he moved the dock the day before it disappeared or that his truck was seen leaving the property with the dock in the bed (although he claims he had no knowledge of anyone using his truck on the day in question and that he did not give anyone permission to do so).

Awalt argues in his supplemental opposition (Doc. 166) that Exhibit A "clearly states that David Awalt committed the offense of theft by removing a section of aluminum dock platform from Site 15." Whatever this document is (it contains no identifying markings), it does not establish a connection to Recon and/or White. The same is true for Exhibit B – there is no link to Recon and/or White.

Although Awalt could get around the qualified privilege by showing it was abused, he has failed to produce any evidence which would create a question of fact on the issue. For this reason, Recon and White are entitled to judgment as a matter of law.

Invasion of Privacy

Although Awalt purports to state claims for false light and right to privacy, Illinois recognizes only one claim, a tort of false light invasion of privacy. This tort has three elements: (1) the defendant placed plaintiff in a false light before the public; (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person; and (3) the defendant acted with actual malice. *See Poulos v. Lutheran Social Serv. of Illinois, Inc.*, 728 N.E.2d 547 (Ill. App. 2000); *Lovgren v. Citizens First National Bank of Princeton*, 534 N.E.2d 987, 990 (Ill. 1989).

Again, there is absolutely no evidence before the Court that the allegations against Awalt were false. There is also no evidence that any of the statements were released to the public or that Recon and/or White acted with actual malice in providing information internally, to URS, or to Allied Security.

Finally, although Awalt claims that he was placed in a false light before his fellow workers and union, he fails to demonstrate that Recon or White disseminated the information to these people. White told James Rucker, a fellow member of Local 520, about the incident, but a review of Rucker's deposition reveals that the statements were made as part of the investigation, and he testified that he did not discuss it at the union hall, and he did not tell anyone about the incident. Moreover, there is evidence before the Court that suggests that the information got to fellow workers and the union by Awalt and/or Lucas. Recon and White are entitled to judgment as a matter of law on this claim.

Tortious Interference

Awalt claims that Recon and White tortiously interferred with a business expectancy. In order to establish liability under this claim, Awalt must prove four elements: (1) a reasonable expectation of entering into a valid business relationship; (2) knowledge of the expectancy by Recon and White; (3) Recon's and/or White's intentional and malicious interference to defeat the expectancy; and (4) injury. *Lescher v. Becker Brothers, Inc.*, 509 N.E.2d 444, 446 (Ill. App. Ct. 1987). This claim is based on Awalt's assertion that he is no longer permitted to enter ConocoPhillips' property. While this may be true, there is no evidence before the Court that Recon or White had anything to do with such a restriction. The property is not owned by Recon or White and who enters it is not up to them. For this reason, Recon and White are entitled to summary judgment on this claim as well.

## CONCLUSION

For the reasons set forth above, Defendants Remedial Construction Services, L.P., and Preston White are entitled to judgment as a matter of law on all claims. Their motion for summary judgment (Doc. 122) is **GRANTED**, and the Clerk is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED:  01/17/06

s/ G. Patrick Murphy
G. PATRICK MURPHY
Chief United States District Judge
